UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Herbert L. R., | File No. 19-cv-00958 (ECT/BRT) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Leslie Tritten, Kenneth Cuccinelli, and Kevin McAleenan, | |
| Defendants.[1] | |

Marc Prokosch, Prokosch Law LLC, Roseville, MN, for Plaintiff Herbert L.R.

Andrew Tweeten, United States Attorney's Office, Minneapolis, MN, for Defendants Leslie Tritten, Kenneth Cuccinelli, and Kevin McAleenan.

Plaintiff Herbert L.R. is a citizen of El Salvador who has lived in the United States since 1999. Despite a removal order, he has been able to remain in the country under temporary protected status. In May 2017, Herbert filed an application with United States Citizenship and Immigration Services ("USCIS") to adjust his immigration status to become a lawful permanent resident. In February 2019, USCIS administratively closed the processing of Herbert's application and informed him that it did not have jurisdiction

---

[1] Acting Director of United States Citizenship and Immigration Services Kenneth Cuccinelli is substituted for former Director L. Francis Cissna and the most recent Acting Secretary of the Department of Homeland Security Kevin McAleenan is substituted for the former Secretary Kirstjen Nielsen, because a "[public] officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

to adjudicate his application. Herbert commenced this case against Defendants to challenge that determination. Defendants have moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), or alternatively Rule 12(b)(6). Defendants' motion to dismiss will be granted because there is not subject-matter jurisdiction over Herbert's claim.

I

Herbert is a citizen of El Salvador who came to the United States on or about June 8, 1999. Compl. ¶ 2 [ECF No. 1]. He entered the United States near Eagle Pass, Texas, without inspection and without a valid entry document. *Id.* ¶ 6; Tweeten Decl., Ex. A [ECF No. 14-1]. On that same day, Herbert was given a notice to appear at a future removability hearing before an immigration judge based on his status as an individual entering the United States without inspection. Compl. ¶ 7; Tweeten Decl., Ex. A; *see* 8 U.S.C. § 1182(a)(6)(A)(i). However, Herbert never received the subsequent notices of hearing that were mailed to him using the address he provided to the Department of Homeland Security, and he failed to appear for his removability hearing on July 6, 2000. Compl. ¶ 7; Tweeten Decl., Ex. C [ECF No. 14-3]. At the hearing, an immigration judge ordered Herbert removed from the United States. Tweeten Decl., Ex. B [ECF Nos. 14-2].

Herbert nonetheless remained in the United States and filed for and received temporary protected status after El Salvador was designated for the program on March 9, 2001, based on a series of devastating earthquakes that prevented the safe return of its nationals. Compl. ¶ 8; 66 Fed. Reg. 14214-01 (Mar. 9, 2001); *see* 8 U.S.C. § 1254a(a)(1).

He maintained temporary protected status from the designation date until its recent expiration on September 9, 2019.  Compl. ¶ 8; 83 Fed. Reg. 2654-01 (Jan. 18, 2018).

On January 7, 2008, Herbert submitted an I-131 Application for Travel in order to temporarily return to El Salvador.  Tweeten Decl., Ex. E [ECF No. 14-5]; *see* Compl. ¶ 9.  USCIS approved his application, and Herbert received authorization for parole of an alien into the United States, which permitted him to travel to El Salvador and be paroled back into the United States when he returned on January 16, 2008.  Compl. ¶ 9; Tweeten Decl., Ex. F [ECF No. 14-6].  Upon his return, he resumed temporary protected status.  Tweeten Decl., Ex. F.  He has not traveled out of the country since that time.  Compl. ¶ 9.

On October 4, 2016, Herbert filed a motion to reopen his removal proceedings.  *See* Tweeten Decl., Ex. C.  An immigration judge issued an order denying the motion on November 15, 2016, finding that it was Herbert's obligation to maintain a current mailing address with the Department of Homeland Security, that removal was proper upon his failure to appear at the July 2000 removal proceedings, and that Herbert's circumstances at that time did not merit a *sua sponte* reopening of removal proceedings.  *Id.*  Herbert appealed, and the Board of Immigration Appeals affirmed the decision.  Tweeten Decl., Ex. D [ECF No. 14-4].

On May 22, 2017, Herbert's spouse, who is a citizen of the United States, filed an I-130 Petition for Alien Relative on his behalf.  Compl. ¶¶ 10–11; Tweeten Decl., Ex. G [ECF No. 14-7].  Herbert also filed an I-485 Application to Register Permanent Residence or Adjust Status seeking to become a lawful permanent resident based on the marriage.  *See* Tweeten Decl., Ex. H [ECF No. 14-8].  USCIS approved the I-130 petition on

3

September 12, 2018; however, it denied Herbert's application to adjust his status on February 15, 2019. Compl. ¶¶ 11–12; Tweeten Decl., Exs. G, H. USCIS determined that it did not have jurisdiction to adjudicate Herbert's application because he was "a respondent in a removal proceeding" and was "not an 'arriving alien.'" Tweeten Decl., Ex. H; *see* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1); Compl. ¶ 12. In its denial letter, USCIS explained:

> USCIS has jurisdiction to grant adjustment only if the Immigration Judge does not have jurisdiction. See Title 8, Code of Federal Regulations (8 CFR), sections 245.2(a) and 1245.2(a). The Immigration Judge has jurisdiction to grant or deny a Form I-485 in any case in which the applicant (other than an "arriving alien") is a respondent in a section 240 removal proceeding before the U.S. Department of Justice, Executive Office for Immigration Review (EOIR). USCIS reviewed your case file, and determined that you are currently in proceedings before an Immigration Judge and a final removal order was issued on July 11, 2000. It does not appear that the removal proceedings against you have been terminated. See 8 CFR section 245.1(c)(8)(ii).
>
> Since you are a respondent in a removal proceeding, and you are not an "arriving alien" only EOIR has jurisdiction to grant or deny your Form I-485. You must submit your Form I-485 to the Immigration Judge in EOIR proceedings.

Tweeten Decl., Ex. H.

In April 2019, Herbert initiated this action. *See* Compl. He alleges that he qualifies as an "arriving alien" based on his 2008 parole entry and that, as a result, USCIS retains jurisdiction to adjudicate his application.[2] *Id*. ¶ 20; Mem. in Opp'n at 6–13 [ECF No. 20];

---

[2] Herbert acknowledges that, in limited circumstances, immigration judges have jurisdiction to adjudicate applications for adjustment of status filed by arriving aliens who are placed in removal proceedings. *See* 8 C.F.R. 1245.2(a)(1)(ii). However, he asserts that he does not fit within that narrow exception. Mem. in Opp'n at 19.

4

*see also* Tweeten Decl., Ex. F. Herbert contends that, because USCIS has jurisdiction over his application, and not an immigration judge, his claim is not inextricably linked to his removal order and, therefore, this Court has subject-matter jurisdiction. Mem in Opp'n at 17–19. He asserts that if adjustment applications were linked to removal orders, "then no arriving alien with a pending removal order would be able to adjust their status through USCIS." *Id.* at 19. Here, Herbert seeks a declaration that he is eligible to adjust his status through USCIS to become a lawful permanent resident and an order compelling USCIS to adjudicate his application. Compl. ¶¶ 22–23. Defendants have moved, pursuant to Rules 12(b)(1) and 12(b)(6), to dismiss Herbert's complaint. Mot. to Dismiss [ECF No. 11].

II

A court reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) must first determine whether the movant is making a "facial" attack or a "factual" attack. *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). Defendants make a facial attack to subject-matter jurisdiction because they accept as true all of Herbert's factual allegations concerning jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); Mem. in Supp. at 6 [ECF No. 13]; Mem. in Opp'n at 5. In analyzing a facial attack, the Court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants have filed fourteen documents in support of their motion to dismiss, which include eight records from Herbert's immigration case and six recent decisions from the Southern District of Texas. Tweeten Decl., Exs. A–N [ECF Nos. 14-1–14-14]. Ordinarily, courts do not consider matters outside the pleadings in resolving a facial challenge to subject-matter jurisdiction or a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(d), but documents that are necessarily embraced by the pleadings may be considered without transforming the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citation omitted). Materials embraced by the complaint include "'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Herbert alleges the contents of the eight immigration records in his complaint, *see* Compl. ¶¶ 6–12, and raises no question as to their authenticity. In fact, he cites to the exhibits containing the records

in his opposition memorandum. Mem. in Opp'n at 2–3, 11; *see* Tweeten Decl., Exs. A–H. The eight immigration records are, therefore, necessarily embraced by the complaint, and they properly may be considered in connection with Defendants' motion to dismiss. As legal authorities, the six recent cases from the Southern District of Texas also will be considered. *See* Tweeten Decl., Exs. I–N.

As a general rule, federal district courts do not have subject-matter jurisdiction to adjudicate claims that directly or indirectly challenge a removal order. "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5); *see also Akinmulero v. Holder*, 347 F. App'x 58, 60–61 (5th Cir. 2009). That judicial review will consider "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien[.]" 8 U.S.C. § 1252(b)(9). Except as provided in § 1252, and

> notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of the Department of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g); *Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 486 (1999) (stating § 1252(g) is "narrow" in that it "applies only to three discrete actions," not all actions that may be part of the deportation process). However, § 1252 "does not eliminate

7

the ability of a court to review claims that are independent of challenges to removal orders." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (quotation omitted).

Determining whether a claim is an indirect challenge to a removal order or whether it arises independently "will turn on the substance of the relief that a plaintiff is seeking." *Id.* (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)). "When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Id.* at 623; *see also Silva*, 866 F.3d at 940 ("A claim that is connected directly and immediately to a decision to execute a removal order arises from that decision." (quotation omitted)).

In his complaint, Herbert invokes federal-question jurisdiction under 28 U.S.C. § 1331 by asserting a claim under the Administrative Procedures Act ("APA"), *see* 5 U.S.C. § 702 et seq., as well as the original jurisdiction provided to district courts by 28 U.S.C. § 1361 over mandamus actions. Compl. ¶¶ 13, 15–17. "However, the APA does not empower courts to set aside agency actions where other 'statutes preclude judicial review.'" *Singh v. U.S. Citizenship and Immigration Servs.*, 878 F.3d 441, 445 (2d Cir. 2017) (quoting 5 U.S.C. § 701(a)(1)). Likewise, §§ 1252(a)(5), (b)(9), and (g) vest judicial review of an order of removal exclusively in the courts of appeals and strip district courts of jurisdiction over claims that arise from the decision to execute a removal order explicitly notwithstanding the mandamus provision in § 1361.

Accordingly, the Court must determine whether § 1252 bars it from exercising subject-matter jurisdiction over Herbert's complaint. No party contends that Herbert's

complaint directly challenges his removal order. Rather, Defendants contend that Herbert's complaint is "a collateral attack on the Immigration Court's Removal Order." Mem. in Supp. at 6. Specifically, they assert that "regardless of the form of Plaintiff's pleading," his claim that he is eligible to adjust his status to become a lawful permanent resident "necessarily implies that the pending removal order . . . is invalid." Mem. in Supp. at 8. Defendants further state that "[i]f this Court declare[s] that the law requires USCIS to adjudicate Plaintiff's application for adjustment of status and grant that application, Plaintiff's removal order would be nullified" and "this Court will prevent the government from executing his outstanding deportation order." Mem. in Supp. at 8, 11. Herbert counters that he seeks only to compel USCIS to act on his application and that he is not requesting that this Court adjudicate his application for adjustment or nullify his removal order. Mem. in Opp'n at 18. He notes that, if USCIS was to adjudicate his application unfavorably, he would remain subject to removal. *Id.*

Numerous circuit courts of appeals have held that § 1252(a)(5) bars district courts from exercising subject-matter jurisdiction over APA claims that indirectly challenge a removal order. *Martinez*, 704 F.3d at 622–23 ("Because the substance of the relief that Martinez is seeking . . . would negate his order of removal, the district court properly determined that it lacked jurisdiction."); *Delgado*, 643 F.3d at 55 (concluding that obtaining I-212 waiver from USCIS was a "necessary prerequisite" to adjustment of status, which was "inextricably linked" to reinstatement of removal order); *Estrada v. Holder*, 604 F.3d 402, 407–08 (concluding relief sought through APA claim would render removal order flawed). In *Singh*, the Second Circuit concluded that the district court did not have

9

subject-matter jurisdiction over an APA claim arising from circumstances quite similar to those presented here. 878 F.3d at 445–46. In that case, the plaintiff-appellant entered the United States unlawfully and, after failing to appear at a removability hearing, was ordered removed. *Id.* at 443. He later married a United States citizen who submitted two I-130 petitions to USCIS on his behalf, the second of which was approved. *Id.* at 443–44. However, USCIS dismissed his accompanying application for an adjustment of status to become a lawful permanent resident on the ground that it did not have jurisdiction to adjudicate the application because his case remained with the immigration court. *Id.* at 444. Singh filed a motion for reconsideration, which USCIS denied because he remained under an order of deportation after unsuccessfully attempting to reopen his deportation proceedings. *Id.* He then moved a second time to reopen deportation proceedings in order to allow adjustment of his status, but the Board of Immigration Appeals denied his motion. *Id.* While an appeal of the denial was pending, Singh filed an APA claim in district court seeking reversal of USCIS's determination that it lacked jurisdiction to adjudicate his application. *Id.* at 444–45. The district court determined that it lacked subject-matter jurisdiction and dismissed Singh's complaint. *Id.* at 445. On appeal, the Second Circuit affirmed the district court, concluding that the APA claim was an indirect challenge to his removal order because the prohibition in § 1252(a)(5) applied "not only to situations where the favorable resolution of a plaintiff's claim would 'per se prevent [the plaintiff's] removal' but also where the claim 'is a necessary prerequisite to [the plaintiff's] ultimate goal of adjustment of status.'" *Id.* at 445–46 (alterations in original) (quoting *Delgado*, 643 F.3d at 55). The court reasoned that the purpose of the action was "to shift jurisdiction

10

from the tribunal that [] ordered him removed and to render the removal order ineffective." *Id.* at 446. Defendants concede that the Eighth Circuit has not considered an analogous case but point to numerous cases from other districts in which courts have dismissed similar or identical claims for lack of subject-matter jurisdiction reasoning that they posed indirect challenges to removal orders. *See, e.g.*, Tweeten Decl., Exs. I–N (containing six cases from the Southern District of Texas reaching this conclusion); *Chen v. Rodriguez*, 200 F. Supp. 3d 174, 181 (D.D.C. 2016); *Mohammed v. Holder*, 695 F. Supp. 2d 284, 291 (E.D. Va. 2010).

These cases are persuasive here. Herbert is subject to an unexecuted order of removal. USCIS's decision to administratively close Herbert's application was based on his removal order and related removal proceedings. Herbert now challenges the procedure and substance of that decision. While Herbert does not seek a declaration from this Court that his status should be adjusted, he seeks an order compelling Defendants to adjudicate his application. Though favorable resolution of Herbert's APA claim would not per se prevent his removal, his claim is a necessary prerequisite to adjusting his status, which would allow him to remain in the country. *See Singh*, 878 F.3d at 445–46. Accordingly, Herbert's claim is inextricably linked to his outstanding removal order.

Herbert argues that "[b]ecause [he] is an arriving alien, and because USCIS has jurisdiction over his case, [this] action is not inextricably linked to his removal order."[3]

---

[3] In other words, Herbert argues that his claim is not inextricably linked to his removal order because, by event of his parole back into the United States in 2008, he is an arriving alien, a status which generally gives USCIS jurisdiction to adjudicate adjustment applications even if the arriving alien has been placed in deportation or removal proceedings. *See* 8 C.F.R. §§ 245.2, 1245.2(a)(1); Mem. in Opp'n at 18-20. Whether

11

Mem. in Opp'n at 5–6. In support of this argument, he points to *Zhang v. Napolitano*, a case in which the plaintiff challenged the timeliness of USCIS's processing of his asylum application. 604 F. Supp. 2d 77, 80 (D.D.C. 2009); *see* Mem. in Opp'n at 18. The court determined it had jurisdiction over the plaintiff's claim, reasoning that although the plaintiff's "ultimate goal is to prevent the Attorney General from executing the removal order upheld by the First Circuit, his present claim seeks only to compel the USCIS to act on his asylum application[.]" 604 F. Supp. 2d at 80. However, the same court more recently considered the impact of § 1252 in *Chen* and concluded, under circumstances more factually relevant to this case, that it lacked subject-matter jurisdiction over the plaintiff's challenge to USCIS's decision to administratively close his application for an adjustment of status. 200 F. Supp. 3d at 182. As such, *Zhang* does not lead to a different conclusion in this case.

Because there is not subject-matter jurisdiction over Herbert's claim, Defendants' Rule 12(b)(1) motion must be granted, and the absence of subject-matter jurisdiction precludes consideration of Defendants' Rule 12(b)(6) motion.

---

Herbert is an arriving alien is an issue that goes primarily to the merits of his claim. However, to the extent that this argument is relevant to the determination of subject-matter jurisdiction, Herbert's status as a temporary-protected-status recipient with an unexecuted order of removal was likely unchanged by his parole. *See* Tweeten Decl., Ex. F.; *see also id.*, Ex. I (*Morales v. McAleenan*, No. 4:18-CV-04514 (S.D. Tx. May 17, 2019)).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant's motion to dismiss [ECF No. 11] is **GRANTED**; and

2. This action is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 18, 2019

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court